**MICHAEL F. KEESEE**
Attorney-at-Law
219 Westchester Avenue
Suite 300
Port Chester, NY 10573

MEMO ENDORSED

Telephone: 914-937-3880
Facsimile: 914-937-3950

mfklawyer@yahoo.com
cell phone 914 413-8691 (best contact number)
April 17, 2020

Hon. Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, NY 10601

Re: USA v. WILLIAM LEWIS
16 CR 302 (KMK)

Your Honor:

I represented William Lewis throughout his original case, and my representation has continued to date as he has had issues regarding his sentence, his incarceration, his release date, and other matters. For the reasons set forth below, I am writing to ask that you issue an Amended Judgment pursuant to your authority under 18 U.S.C. 3582 (c)(1)(A). I respectfully ask that you treat this as a Letter Motion for such relief.

Some background may help frame the rather unusual circumstances that Mr. Lewis has found himself in at the present. His charges involved a Robbery, 18 U.S.C. 1951, Conspiracy to commit this robbery, a Weapon count 18 U.S.C. 924(j), and a Narcotics conspiracy, 21 U.S.C. 841(b)(1)(C) and (D). Lewis cooperated with the Government, pled guilty and testified at co-defendant Herring's trial. His sentence was 60 months.

He spent many months at the GEO facility in Queens while his case was pending, and he was there for several months after his sentence as well. I think he was moved to the Orange County jail for a short period. I sent mail to him there that was returned because he had been moved again. He was sent to a BOP facility in Pennsylvania (Loreto), and then he was transferred to FCI Canaan. There he encountered terrible treatment from the staff, apparently because he was labeled as a cooperator. They took away some of his good time there based on transgressions a guard claimed were committed by Lewis.

He was given a choice of staying in Canaan and disputing the alleged violations, or he could accept transfer out immediately. However, immediate transfer was conditioned on his consenting to the later release date. It was 2 weeks of additional time, according to my

client. He was desperate to get out from under the treatment that can be described as tyrannical, assuming his version is true. He opted to get out of Canaan on the next bus. He was sent back to NYC, and I believe he had a short stay at MDC, and then he was sent back to GEO in Queens. He was involved in an on-going investigation conducted by the U.S. Attorney's Office, so he was left in custody there. He is still at GEO now.

According to the Bureau of Prisons Inmate Locater, he is due for release on June 6. I presume this means June 5, as the 6th falls on a Saturday and I am told that there is no release on weekends. This is where it the situation becomes a bit more complicated. GEO is not a BOP facility. He has no Case Manager as he would have in a BOP facility. I spoke with a person at BOP who incorrectly told me that he had been moved from GEO to a BOP facility. Apparently, BOP is not up to date, as I called GEO, and he is reportedly there. He calls me and writes from there, GEO says he is there, so I think its safe to conclude he is at GEO.

That brings me to the next problem. As a non-BOP inmate, and without a Case Manager, he is not being prepared in the usual manner for release. I spoke to the U.S. Probation Supervisor and he advised me that Lewis was not on their radar at all. He said that by now (this was a month ago) Lewis should have had a discharge plan with a possible home visit and a schedule for reporting and testing. Lewis knows he must report on release to the nearest office. To date, no progress has been made towards a release plan for an inmate with less than 50 days left on his sentence.

Lewis has a history of medical ailments, not the least of which is diabetes. The PSR also indicated that he gets medication for high blood pressure. I can represent to the Court that I have about 300 pages of his medical records, but they are in my storage unit and I do not have immediate access to the unit as I did before the shutdown. I have seen the records. I can confirm that Lewis has a number of medical conditions, and some surely would place him in a high risk category if he were to contract the virus.

He is in a facility (GEO) where the inmates are housed in dorm areas, so there is no way to accomplish the social distancing necessary to minimize the risk of contracting the Covid-19 Virus. I am also told that there are inmates at GEO who are positive for the virus, and that at least 3 guards at GEO have also tested positive.

I do not believe that I need to cite extensively to the recent articles, BOP news releases, Attorney General memos, or Covid-19 statistics. I am confident that the Court is well aware of the fast-changing state of this area of the law. There are very recent decisions from SDNY Judges granting immediate relief in these extraordinary times. I refer to Judge Analisa Torres in U.S. v. Wilson Perez, 17 CR 513, Judge Loretta Preska in U.S. v. McMillan, 91 Cr 685. There is also a decision by Judge Englemayer regarding a defendant who, similar to Lewis, was not in BOP custody. These decisions state that in this time of

health crisis, the old necessity of writing the warden and waiting 30 days is no longer practical in compassionate release applications. Moreover, in Lewis' case, the GEO warden has no authority to grant any application, as Lewis is in theory a BOP prisoner, but he is not in their custody.

I respectfully ask that the Court decide this application on its merits, and not wait for procedural happenings that are no longer practical. Of course, I expect the Government will have an opportunity to reply, but I ask that this request be calendared as soon as possible. I would waive his physical appearance in court, and I would be prepared to 'appear' by phone if the Court would require or permit, or this could be deemed "Submitted". My application is to amend his judgment to Time Served. He will still have supervised release as in the original judgment. He could be placed on house arrest until the June 5 or 6 date, and then he could be subjected to the regular U.S. Probation supervision and rules.

The U.S. Attorney's Office has been very responsive to my requests for information and assistance as it relates to this client's sentence (AUSA Comey), and my client and I appreciate her and her office's efforts. When I queried as to whether they would take a position on an application for compassionate release, I was told they would assess each case individually, if the motion were made. I view this application to be the equivalent of a motion for compassionate release, so I anticipate that they will review it and respond appropriately.

Lewis was viewed as a truthful cooperator. He testified truthfully at trial of a co-defendant. Other than the brief stint at Canaan, he has not had difficulties with the prison authorities. He is but 50 days short of his release date. The way things are going, he is unlikely to have any contact with Probation before his release. He can certainly report to White Plains upon his release. He can live upstate with his family there, his mother and stepfather. He was hoping that the case agents would help get him established, but to date, that has not happened.

I respectfully suggest that a quick designation by BOP would not in any way be a better solution. His first stop would likely be MDC. The Court is aware of the numerous cases of virus there. It is doubtful that Probation would or could visit him there. I suspect that GEO has some sort of video conference capability that could establish contact between Lewis and probation immediately. Rules could be made clear to Lewis.

William Lewis is 49 years of age. He appears older than his actual age. He has a number of medical conditions that place him in a high risk category for Covid-19. If the Court were to amend the judgment to time served, he could be released from GEO, he could report to Probation, and a Supervised Release program established.

Accordingly, I am asking the Court to issue an Amended Judgment specifying Time Served, and impose any further conditions that are just and proper.

Respectfully submitted,

/s/ Michael F. Keesee

Electronically signed by

Michael F. Keesee

cc: U.S. Attorney's Office via ECF and email

Mr. Lewis makes an application for a modification of the judgment in this case to one of time served. Officially, this is an application for compassionate release under 18 U.S.C. Section 3582, as recently amended in the First Step Act of 2018. Mr. Lewis was sentenced after serving as a cooperating witness, which resulted in a sentence substantially below the applicable Sentencing Guidelines. He is due to be released on June 6, 2020, which just over a month from now. Mr. Lewis argues for his early release because he suffers from diabetes and high blood pressure, which he says puts him a higher risk from contracting COVID-19. The Government opposes the application. The Court grants the application. It is beyond dispute that Mr. Lewis is at high risk from COVID-19, as the literature makes clear that diabetes is one of the most significant comorbidity factors and that is no doubt heightened by Mr. Lewis's high blood pressure. The Government counters this with an assertion that Mr. Lewis as refused to take certain medication, but that fails to address the fact Mr. Lewis is still a diabetic and is at risk. Moreover, counsel for Mr. Lewis, who has studied the medical records, counters that Mr. Lewis has only declined to take certain medication that, in fact, had not been prescribed at two other institutions, because that medicine had serious side effects. Mr. Lewis has apparently continued to take other medication and there is not evidence that Mr. Lewis has been on some campaign of self-destruction. Thus, this is no reason to deny the request. The Government also notes that Mr. Lewis' conduct in this case suggests he is a danger to the community and that he could infect those with whom he might live upon release. Both are fair points, but ultimately not persuasive. As for Mr. Lewis' danger, he is due to be released on over a month, so it is hard to understand how Mr. Lewis will be a particular danger in May, but not in June. The Government signed him up as a cooperator and chose to put him on the witness stand, and then filed the motions that allowed for a below-Guidelines sentence. And, as for any COVID-19 risk Mr. Lewis poses, that can be addressed by placing him in a 14-day quarantine. Therefore, after consideration of all the factors that the applicable statute requires to be considered, the Court grants the application. However, the Court modifies the supervised release conditions imposed at the time of sentence to require Mr. Lewis be subject to home confinement until August 31, 2020.

So Ordered.

4/30/20